---

## REID v. SAN PEDRO, LOS ANGELES & SALT LAKE RAILROAD COMPANY.

No. 2192.   Decided November 24, 1911 (118 Pac. 1009).

1. RAILROADS—KILLING ANIMALS—ENTRY ON RIGHT OF WAY THROUGH GATES. Under Comp. Laws 1907, sec. 456x1,. providing that, when a railroad company provides gates for private crossings for the convenience of the owners of the lands through which its road passes, such owner shall keep the gates closed when not in actual use, and if he fails to do so, and in consequence his animal strays on its road and is injured, he cannot recover therefor—the animal having entered through such gate, left open through no fault of the company, and having been killed by its train through no fault of its trainmen, it is not liable.   (Page 621.)

2. RAILROADS—KILLING ANIMALS—PLACE OF ENTRY ON RIGHT OF WAY—EVIDENCE. There being no direct evidence where an animal killed by a train got on the right of way, the owner, having the burden of proof, cannot recover on evidence that the right of way fence was down a mile from the accident; it appearing that in the immediate vicinity of the accident a gate was open, for which the company was not liable,. and the evidence being, at least, as strong that she entered there as through the broken fence.   (Page 621.)

3. RAILROADS—KILLING ANIMALS—RIGHT OF WAY FENCE—EVIDENCE. Evidence, in an action for the killing of animals by a train, held, sufficient to go to the jury on the question of their having entered on the right of way at a point where the company had left unfenced more ground than reasonably necessary for station grounds, and which, therefore, it was its duty to fence.   (Page 622.)

APPEAL from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by Janet A. Reid against the San Pedro, Los Angeles & Salt Lake Railroad Company.

Judgment for plaintiff. Defendant appeals.

AFFIRMED IN PART AND REVERSED IN PART, AND REMANDED.

### STATEMENT OF FACTS.

This action was brought by respondent to recover damages for the killing of certain cattle by the trains of appellant. Four separate and distinct causes of action are set forth in the complaint.

It is alleged in the first cause of action that appellant's railroad passes through certain lands in Salt Lake County, Utah, owned and improved by private owners; that appellant carelessly and negligently permitted the fence along its line of railroad where the same passes through the lands mentioned to be broken and in poor repair and become down so that cattle had an easy passage through the same; that appellant "carelessly and negligently left and permitted to remain open a gate along the line of said railway at said point, and plaintiff (respondent) does not know, and therefore is unable to state, whether the fence was down or the gate left open, and because thereof a three year old heifer of the plaintiff strayed on the right of way of said defendant company, and defendant so carelessly and negligently operated its train that it ran on and over said heifer."

In the second cause of action it is alleged that at Riter, Salt Lake County, Utah, appellant's railroad passes through lands owned and improved by private owners; that appellant at said point maintains what is called an "open switch;" that on the north side of the track for half a mile where the same passes through the lands mentioned there is no fence along the right of way, and on the south side of the track, and only a few feet therefrom, is a large ditch, and on the south side of the ditch is a fence; that at or near the ends of the open switch a fence runs across the right of way and

a cattle-guard is placed on the track between the ends of these cross-fences. It is further alleged that, because of the absence of any fence on the north side of the track, cattle are permitted to go on said right of way, and that on the approach of a train the cattle are frightened and run ahead of said train until they come to the cross-fences, which they follow until they come to the cattle-guards, thence, seeing an open space between the fences, endeavor to pass through and are caught in the cattle-guard and killed by the train; that appellant has maintained said open switch and conditions above described for several years; that on or about the 8th day of December, 1908, four three year old heifers belonging to respondent were, through the negligence of appellant in maintaining said open switch and conditions above described, and through the appellant negligently and carelessly operating said train, run over and killed.

The facts alleged in the third and fourth causes of action regarding the conditions existing at the open switch are substantially the same as those alleged in the second cause of action.

In its answer appellant admits its corporate existence and ownership of the railroad mentioned; admits the killing of the cattle described in the complaint; admits that at Riter it maintains an open switch, and that on the north side of its track at that point for half a mile there is no fence along its right of way; admits the existence of the ditch, the wing fences running across the right of way, and the cattle-guards as described in respondent's complaint; but denies the allegations of negligence contained in the complaint; and, as a further defense, alleges "that at said Riter there is a station and necessary station grounds maintained by the defendant, which said station grounds are kept open and unobstructed to afford necessary and proper ingress and egress to and from said station of Riter."

A trial was had which resulted in a verdict for respondent on each of the four causes of action. From the judgment entered on the verdict, appellant prosecutes this appeal.

*Pennel Cherrington* and *Dana T. Smith* for appellants.

*Allen T. Sandford* for respondent.

McCARTY, J., after stating the facts as above, rendered the opinion of the court.

It is contended on behalf of appellant that the evidence is insufficient to support the verdict because it fails to show where and under what circumstances the cattle sued for got upon the right of way.

The evidence shows that the cow mentioned in the first cause of action was being pastured on land that was fenced, improved, and owned by a private party, and through which appellant's railroad was constructed and maintained; that respondent did not own the land, but was pasturing her stock thereon by permission of the owner at the time the cow was killed; that the fence inclosing appellant's right of way was down and out of repair about one mile west of the point where the cow was killed; that two gates opening into the right of way in the immediate vicinity of the place where the accident occurred, which were installed and maintained by appellant for the benefit and convenience of the owner of the land through which the railroad passes and upon which the cow was being pastured, had been left open almost continuously prior to the accident.

It is not contended, nor even suggested, that these gates, which were in good condition, were used or left open by appellant. In fact, the evidence, what there is on this point, tends to show that the appellant was in no wise responsible for the gates being left open. Respondent contends that the judgment, in so far as it is based on the first cause of action, should be affirmed regardless of whether the cow got on the right of way through the broken fence or the open gate. In his brief counsel for respondent says: "In the first cause of action the evidence showed the fence down and gate open. . . . It is immaterial whether the heifer strayed on through an inviting open gate or an enticing open fence; . . . either gives the verdict to the plaintiff."

Comp. Laws 1907, section 456x1, provides:

"Whenever such railroad company shall provide gates for private crossings for the convenience of the owner of the lands through which such railroad passes, such owner shall keep such gates closed at all times when not in actual use, and if such owner fail to keep such gates closed, and in consequence thereof his animal strays upon such railroad, and is killed or injured, such owner shall not be entitled to recover damages therefor."

Under this statute, if the cow entered upon the right of way through the open gate, appellant cannot be held liable for her loss; there being no evidence of negligence on the part of trainmen at the time she was killed.

There is no direct evidence as to where the cow got onto the right of way. It is conceded, however, that she was killed in the immediate vicinity of the gate mentioned, and, as shown by the evidence, about one mile from the point where the fence inclosing the right of way was down and out of repair. The inference, therefore, is just as strong, if not stronger, that she entered upon the right of way through the open gate as it is that she entered through the fence at the point where it was out of repair. The plaintiff held the affirmative, and the burden was on her to establish the liability of the defendant by a preponderance of the evidence. It is a familiar rule that where the undisputed evidence of the plaintiff, from which the existence of an essential fact is sought to be inferred, points with equal force to two things, one of which renders the defendant liable and the other not, the plaintiff must fail. So in this case, in order to entitle respondent to recover it was essential for her to show by a preponderance of the evidence that the cow entered upon the right of way through the broken down fence. This the respondent failed to do.

We are of the opinion that the verdict rendered on the first cause of action is not supported by the evidence, and that the trial court should have directed a verdict for appellant on that cause of action in accordance with appellant's request. (*Rhines v. Chicago, etc. R. R. Co.*, 75 Iowa, 579, 39 N. W. 912; *Morrison v. N. Y., etc., R. R. Co.*, 32 Barb. (N.

Y.) 575; *Bremmer v. Green Bay, etc. R. R. Co.,* 61 Wis. 114, 20 N. W. 687.)

The animals mentioned in the second, third, and fourth causes of action were killed at or near the cattle-guards at the west end of the open switch at Riter. This switch or siding is 3000 feet in length and was built and primarily used for a "passing track" only. That is, it was maintained in order to permit trains to pass at this point. In the early part of the year 1907 appellant established what it claims to be a station at or near the east end of this switch or siding and removed the fence along its right of way on the north of the switch and for several hundred feet to the east and to the west thereof, leaving an open space north of the track 3600 feet in length. The fence along the south side of the track at this point was not disturbed.

The first contention made by appellant regarding the second, third, and fourth causes of action is that Riter is a railroad station to which freight is shipped and where passengers are taken on and permitted to get off the trains; that the convenience of the railroad company, as well as that of the public, require that the station grounds be kept open on the north for a distance of 3600 feet, and, there being no evidence of negligence on the part of the men operating the train that collided with the cattle, no recovery can be had on either of these causes of action. The record shows that in the early part of 1907 a gravel platform was constructed at Riter. Since then some freight has been consigned to and delivered at Riter, and a few passengers get off and on the local train at that point. At the time the cattle in question were killed, no depot or other building had been erected at Riter. Since the killing of the cattle, appellant has erected a "shelter" near the east end of the switch in question consisting of a "three-sided, one-story, low frame building." Regarding the amount of freight consigned to Riter, R. W. Chiswell, appellant's principal witness, testified in part as follows: "Since about 1907 . . . there has been but very little freight. I could not say that it averaged one car a

month. There is not sufficient to establish a station or telegraph agent."

The evidence, without conflict, shows that, because of the lay of the ground along the north side of the railroad track from a point about 500 feet west of the east end of the siding to the cattle-guards on the west, a distance of more than 2500 feet, it is inconvenient to unload freight from the cars. The evidence introduced by appellant shows that for 2000 feet east of the west cattle-guards there is a "borrow pit" running parallel with the railroad track, and because of this pit it is "practically impossible to use the grounds for receiving or delivering freight. Teams could not load or unload along these points." And the evidence further shows that up to the time of the trial not more than two cars containing freight consigned to Riter were left on the siding at any one time. The evidence does not show, nor is it claimed, that there are any prospects of the traffic increasing at that point. The court, by proper instructions, submitted the question to the jury of whether the appellant left unfenced more ground than was reasonably necessary for station grounds at that point, and the jury, by their verdict, found, and we think properly so, against appellant on that issue.

Counsel for appellant, however, contend that there was no evidence tending to show that the cattle described in the second, third, and fourth causes of action got on the right of way at a point where appellant was required to maintain a fence. As we have stated, the animals were killed at, or within a few feet, of the cattle-guards at the west end of the open switch or siding. This of itself was sufficient to entitle the respondent to have the question of whether the cattle got on the track at or near that point submitted to the jury. (Thornton R. R. Fences, etc., section 241; 33 Cyc. 1281, and cases cited.) The evidence, however, without conflict, shows that soon after the animals were killed tracks were found on the right of way at and near the west end of the siding, and none were found at any other point on the right of way. It is conceded that because of the fence and a deep ditch im-

mediately south of the railroad track the cattle could not have entered upon the right of way from the south.

We are of the opinion that there is abundant evidence to support the verdict of the jury on the three causes of action last mentioned, and as to those the judgment is affirmed, but is reversed as to the first cause of action. The cause is remanded, with directions to the lower court to grant a new trial on the first cause of action and to modify the judgment accordingly. Costs to be taxed against appellant.

FRICK, C. J., and STRAUP, J., concur.