399 P.2d 210

**Carol EWAN, Plaintiff and Appellant,**

**v.**

**Ray BUTTERS, Defendant and Respondent.**

**No. 10086.**

Supreme Court of Utah.

Feb. 23, 1965.

Bell & Bell, Salt Lake City, C. Ben Martin, Boise, Idaho, for appellant.

Hanson and Garrett, Salt Lake City, for respondent.

CROCKETT, Justice:

The plaintiff, Carol Ewan, sues for injuries suffered when struck by the defendant's northbound car as she walked eastward across U. S. Highway 91 at about 10th North in Salt Lake City. Trial was commenced before a jury. At the close of the first day, upon the basis of the plaintiff's evidence as to how the accident occurred, the court granted defendant's motion to dismiss on the ground that it showed that she was contributorily negligent as a matter of law. Plaintiff appeals.

■ Wherever there is conflict we review the evidence in the light most favorable to the plaintiff.[1] She is a passenger agent for West Coast Airlines. After her working hours she demonstrates and sells a product called Relaxercizor. For that purpose on the evening of November 21, 1962, she went to find an address on Duluth Street in the northwest part of Salt Lake City; got lost, and her car stuck in the mud. She walked eastward toward U. S. Highway 91 at about 1050 North heading for a service station on the east side of that highway. There being no crosswalks in that immediate area, she undertook to cross the highway toward the service station. She looked and saw no traffic coming from the north. But toward the south she saw the headlights of two automobiles approaching. She states that they appeared to be about two blocks away (the city block is 660 feet) and traveling at a relatively slow speed, about 20 miles per hour. She judged that she had time to cross safely and proceeded to do so. At that point U. S. 91 is a six-lane highway, 105 feet wide. Plaintiff has no recollection of being struck, nor as to the point of impact. But according to defendant's statement, made to her in the hospital later, plaintiff had proceeded practically across and was within two steps (or about four or five feet)

of the east edge when she was struck by defendant's car coming from the south.

■ In order to justify the trial court's dismissal, the evidence must show with sufficient certainty that reasonable minds would not differ thereon that plaintiff was negligent and that her negligence was a proximate cause of her injury.[2] It should be borne in mind that the defendant has the burden of proving both of those issues by a preponderance of the evidence. Consequently, if there is any reasonable basis in the evidence, or from lack of evidence, upon which fair-minded jurors could reasonably remain unconvinced on either or both of those issues, then the trial court was not justified in ruling against her as a matter of law.[3]

We are not here confronted with the situation postulated by defendant, that the plaintiff looked as she started to cross the highway, then proceeded without giving any further attention to traffic from the south. A fair analysis of the evidence will reveal that this is not necessarily the fact, and that plaintiff's conduct could reasonably be regarded as consistent with due care on her part. Concededly, such a finding is in turn dependent upon a finding that because of severe shock and consequent unconsciousness the plaintiff suffered what is called

---

1. See Martin v. Stevens, 121 Utah 484, 487, 243 P.2d 747, 749 (1952).
2. Martin v. Stevens, supra note 1.

3. See Thompson v. Ford Motor Co., 16 Utah 2d 30, 395 P.2d 62 (Sept. 1, 1964); cf. also Nelson v. Hutchings, 15 Utah 2d 202, 390 P.2d 121.

traumatic retrograde amnesia which has blotted out her memory of events just prior to the impact. As the medical testimony shows, it is a well-known fact that persons knocked unconscious by a severe shock may suffer that type of amnesia, and that it results in inability to recall events immediately preceding the unconsciousness. The length of time for which the memory is obliterated may vary from a few seconds to hours.

On this point the defendant quite understandably places emphasis on the aspect of plaintiff's testimony most favorable to his position. This is her statement on direct examination that:

"I had only—almost crossed the street and it was a shock to me to wake up and find that I was any place but across the street."

But plaintiff argues persuasively that this impression that she had "almost crossed the street and it was a shock to me to wake up" elsewhere is not necessarily inconsistent with her testimony that she is unable to remember anything after looking southward and ascertaining that it appeared to be safe to cross and proceeded with the intention of doing so. Her other testimony bears this out. Upon being pressed considerably by counsel on cross-examination that after she started she did not look south again, she persisted in stating that she remembered nothing after making that observation and answered further:

"I did not say I didn't look. I don't remember. The last I remember I was just plain walking."

We remain cognizant of the fact that generally a person's testimony is no stronger than as left by admissions against his interest. But like all rules, this must be applied in a sensible and practical way. Its usual application is where a witness's testimony shows a definite position which would preclude his recovery or adversely affect his rights. But the effect of the rule is lessened where the witness in his other testimony corrects, explains or modifies such a statement. To say that an adverse statement is binding under any and all circumstances would conform neither to common sense nor to justice. Testifying in one's own case would be hazardous indeed. The entire effect of otherwise credible testimony which may be of vital importance might be entirely destroyed because of an inadvertent slip of the tongue, or an honest mistake, or perhaps because of the failure to fully and accurately paint the whole picture in one statement. A sense of fairness and a desire to get at the truth of the matter, which is the only legitimate objective, render it imperative that the testimony of a witness should not be fragmented and considered piecemeal, but should be considered altogether.

■ Accepting the contention that the plaintiff's one statement is somewhat inconsistent with her other testimony, the law does not operate in any such arbitrary manner as to sanction the defendant insisting that it be regarded in isolation and as binding against her, but where other testimony corrects and explains the statement, the jury should be permitted to appraise her whole testimony in the light of such explanation.[4] It is our opinion that if this is done, a jury might fairly and reasonably believe that she was unable to remember what happened for an appreciable interval just prior to being struck by the defendant's car. If the jury should so conclude, the plaintiff would then be aided by the recognized rule that, "Where the loss of memory * * * rendering the survivor of an accident incapable of testifying as to the accident is shown to be attributable to such accident, it will be presumed, in the absence of evidence to the contrary, that he exercised due care."[5]

Consequently, the trial court was in error in ruling as a matter of law that plaintiff was guilty of negligence.

■ In regard to the argument that recognizing retrograde amnesia permits a "convenient memory" and opens the door to falsification, it is to be observed that almost any kind of a case can be built on falsehood. Apprehensions about this should not preclude anyone having a bona fide case from being allowed to have the issue tried and determined. It is the prerogative and the duty of the jury to determine truth or falsity of claims presented for adjudication.[6]

4. See Virginia Electric & Power Co. v. Mabin, 203 Va. 490, 125 S.E.2d 145; Bowles v. Bourbon, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1; Hughes v. Greider, 194 Iowa 726, 190 N.W. 420; Houston v. Chicago R. I. & P. Ry. Co., 118 Mo. App. 464, 94 S.W. 560; DeVas v. Noble, 13 Utah 2d 133, 369 P.2d 290; Ivie v. Richardsen, 9 Utah 2d 5, 336 P.2d 781.

5. 38 Am.Jur., Negligence, § 293 (1964 Supp., p. 127, text following note 10); see Rutovitsky v. Magliocco, 394 Pa. 387, 147 A.2d 153 (1959); Gigliotti v. Nunes, 45 Cal.2d 85, 286 P.2d 809, 814 (1955). The proposition is aptly stated in Hoppe v. Bradshaw, 42 Cal.App.2d 334, 108 P. 2d 947 (1941). Plaintiff remembered approaching the street where he was struck, but did not remember whether he looked to see if traffic was approaching. Held: "[T]he [plaintiff] was deprived of his testimony because of the injuries received in the accident. * * * [T]here appears to be sufficient evidence, if believed by the jury, to justify the conclusion, if drawn by the jury, that the [plaintiff] appellant was deprived of his memory because of a head injury. If the jury so concluded, appellant would then be entitled to the benefit of the presumption [of having exercised reasonable and ordinary care]." Followed on almost identical facts in United States v. Reichel, 220 F.2d 869 (9th Cir. 1955); See also Walter v. Shemon, 267 Wis. 424, 66 N.W.2d 160, 162 (1954); Prewitt v. Rutherford, 238 Iowa 1321, 1328, 30 N.W.2d 141, 144 (1947); Koch v. Elkins, 71 Idaho 50, 225 P.2d 457, 460 (1950); see in general, Anno., 141 A.L.R. 872 (collecting cases).

6. See Samms v. Eccles, 11 Utah 2d 289, 358 P.2d 344; see statement in Holland v. Brown, 15 Utah 2d 422, 394 P.2d 77,

As we have stated many times, questions of fact should be taken from them only when they are free from doubt; and where doubts exist they should be resolved in favor of according the parties a trial by jury which is fundamental in our system of justice.[7] It is necessary to remand the cause for that purpose. Costs to plaintiff (appellant).

McDONOUGH and WADE, JJ., concur.

HENRIOD, Chief Justice (dissenting).

I dissent. The only evidence of plaintiff's position on the street was as admitted by the main opinion, testified to by plaintiff herself, to the effect she had traveled "almost across the street" when the accident happened. The plaintiff's case substantially was based on a presumption of due care for her safety arising out of a doctrine based on traumatic amnesia. If she knew where she was when almost across the street the accident would have to have happened within a half second or less before she reached a point of safety. She said she was walking fast at that point, and there is a presumption that she continued to do so; which presumption certainly destroyed any presumption of due care, and also any theory that she was the victim of "traumatic retrograde amnesia." The facts simply do not bear out any such theory, since it must be assumed that applying such a doctrine, her blacking out would have to cause her to disremember events only during one-half second before the accident. This is unrealistic under the facts of this case, and the trial court was correct in not permitting the jury to conjecture as to such an unwarranted assumption.

To say the trial court was wrong in this case is to minimize or destroy a studied conclusion of that court, when this court, many times, has said most everything should be left to the sound discretion of the trial court. This court also has deified the jury system, but when such worship extends to a case like this it seems that such sanctity becomes rather superficial.

CALLISTER, J., concurs.

79 (1964); cf. Ferguson v. Seattle, 27 Wash.2d 55, 176 P.2d 445 (1947), a retrograde amnesia case in which the jury found for defendant.

7. See Newton v. Oregon Short Line R. Co., 43 Utah 219, 134 P. 567, 570 (1913).